UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

OLEO-X LLC,

    Petitioner,

-against-                                                                                  No: 1:24-cv-04706-CM

SAINT PAUL COMMODITIES, INC.,

    Respondent.
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

McMahon, J.:

    Petitioner Oleo-X, LLC ("Petitioner" or "Oleo") petitions this Court for an order vacating an arbitration award acknowledged and executed on May 10, 2024. Dkt. No. 1, Ex. A. Respondent Saint Paul Commodities, Inc. ("Respondent" or "SPC") cross-moves to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer this action pursuant to 28 U.S.C. § 1404(a) in deference to the action currently in the United States District Court for the Southern District of Mississippi (the "Mississippi Action"), where SPC has filed a petition to confirm the arbitration award at issue and Oleo counterclaimed to vacate the award with the identical claims it asserts in this action (the "New York Action"). Dkt. No. 8.

    Only one court is going to hear these two identical cases. Given my druthers, I would prefer simply to grant SPC's alternative motion to transfer this action to the Southern District of Mississippi, which is where Oleo is located and where the initial motion to confirm the award was filed. However, given settled precedent, it is not for this Court to determine which court decides whether to confirm or vacate the arbitration award. I thus DENY the motion to dismiss

1

for improper venue and STAY this action pending a decision on the motion to transfer presently pending in the United States District Court for the Southern District of Mississippi.

## BACKGROUND

### I. STATEMENT OF FACTS

Oleo is a Mississippi limited liability company in Pascagoula, Mississippi in the business of pretreating and processing feedstock for its customers. Dkt. No. 1, Ex. A, ¶¶ 1, 6. SPC is a Minnesota corporation that sells "yellow grease," a type of renewable feedstock comprised of various animal fats and oils. *Id.*, Ex. A, ¶¶ 2, 6.

In November 2022, SPC and Oleo entered into an agreement under which SPC would ship 20 railcars of yellow grease per week to Oleo's facility in Pascagoula, Mississippi until the end of 2023. Dkt. 12, ¶ 4; *Id.*, Ex. E, ¶ 8. SPC alleges that between December 1, 2022, and January 24, 2023, SPC shipped 76 railcars of yellow grease to Oleo, which Oleo then accepted. *Id.*, Ex. E, ¶¶ 13–14. Initially, Oleo paid $500,000 in advance for shipments that began on December 1, 2023. *Id.*, Ex. E, ¶ 17. However, from early January 2023 onward, Oleo failed to pay any invoices received for shipments of yellow grease from SPC. *Id.*, Ex. E, ¶ 20. On February 10, 2023, SPC sent a demand letter to Oleo alleging that Oleo owed SPC $8,439,103.38 in unpaid invoices. *Id.*, Ex. E, ¶ 21. On February 14, 2023, Oleo attempted to process the yellow grease, which Oleo alleges damaged equipment at its treatment plant. Dkt. 1, Ex. A, ¶ 10. On March 3, 2023, Oleo responded to the demand letter saying that (1) Oleo and SPC did not have a binding agreement, and (2) that even if Oleo and SPC had an agreement, SPC breached the agreement by shipping yellow grease that did not meet the agreement's specifications. Dkt. No. 12, Ex. E, ¶ 25.

On April 9, 2023, SPC filed a Demand for Arbitration with the American Arbitration Association ("AAA"). *Id.*, Ex. E. Pursuant to the Arbitration Rules of the American Fats and Oils Association ("AFOA"), following a strike process, AFOA members Justin Nielsen, Brian Owens, and William McBee were selected to serve as the three-member arbitration panel (the "Panel"). *Id.*, Ex. G; Dkt. No. 9, p. 3.

On September 25, 2023, then-counsel for Oleo, Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), submitted a Joint Proposed Scheduling Order in which the parties agreed to hold a Final Hearing before the arbitrators in Chicago, Illinois on February 12, 2024. Dkt. No. 12, Ex. H, ¶ 7. On February 1, 2024, Quinn Emanuel informed the Panel that it was withdrawing as Oleo's counsel, and Oleo requested a 60-day continuance to find new representation. *Id.*, Ex. I. On February 2, 2024, the Panel granted the continuance. *Id.*, Ex. J. On February 7, 2024, the Panel rescheduled the Final Hearing for April 8–10, 2024, in Chicago, Illinois. *Id.*, Ex. K, pp. 3–4.

On March 22, 2024, the Panel emailed the parties requesting to hold the Final Hearing virtually. *Id.*, Ex. K, p. 1. Both SPC and Oleo agreed. *Id.*, Ex. K, p. 1; *Id.*, Ex. L, p. 1. The Final Hearing occurred virtually from April 8–10, 2024. *Id.*, ¶ 3. On May 10, 2024, the Panel issued its Award determining, among other things, that: (1) the parties' agreements "are valid contracts"; (2) Oleo materially breached the agreements, and (3) the "grand total amount of $16,688,415.05 [was] due SPC by May 30th, 2024." *Id.*, Ex. M.

## II.  PROCEDURAL HISTORY

On May 13, 2024, SPC filed a Petition to Confirm Arbitration Award in the Southern District of Mississippi. Dkt. No. 12, Ex. A. In its Petition, SPC alleged that (1) "Oleo is a Mississippi limited liability company with a principal office address of 1001 Industrial Road,

3

Pascagoula, Mississippi, 39581," (2) "This Court has jurisdiction over this action under 9 U.S.C. § 1 *et seq.* and 28 U.S.C. § 1332(a);" (3) "Complete diversity exists between the parties, and the amount in controversy exceeds $75,000;" (4) "Venue for an action to confirm an arbitration award is proper in this District under 9 U.S.C. § 9 [and] 28 U.S.C. § 1332(a);" and (5) "This Court has personal jurisdiction over Oleo." *Id.*, Ex. A, ¶¶ 6–9.

Several weeks later, on June 4, 2024, Oleo filed a Petition to Vacate Arbitration Award in New York Supreme Court. Dkt. No. 1, Ex. A. The very next day, on June 5, 2024, Oleo filed its Answer in the Mississippi Action. In that Answer, Oleo conceded all five of the jurisdictional allegations, Dkt. No. 12, Ex. C, ¶¶ 6–9. Oleo also affirmatively asserted a counterclaim against SPC to vacate the arbitration award. *Id.*, Ex. C, pp. 5–6.

On the same day, Oleo filed a Motion to Stay Proceedings in the Mississippi Action, or, in the alternative, to transfer the case to New York, arguing that without a stay or consolidation of the two actions, "simultaneous and duplicative litigation [would] result, with the risk of inconsistent results." Dkt. No. 12, Ex. N, ¶ 4. That motion has not been decided yet by my colleague in the Southern District of Mississippi.

On June 20, 2024, SPC removed the New York Action to this Court. Dkt. No. 1. On June 27, 2024, SPC filed this Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) or Transfer Pursuant to 28 U.S.C. § 1404(a). Dkt. No. 8.

## DISCUSSION

### I.  STANDARD OF REVIEW FOR IMPROPER VENUE

On a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), "[t]he plaintiff bears the burden of establishing that it has chosen the proper venue." *Anonymous v. Kaye*, 104 F.3d 355 (2d Cir. 1996) (citations omitted). "In deciding a motion to dismiss for improper venue,

4

the court may examine facts outside the complaint to determine whether venue is proper." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F.Supp.2d 553, 555 (S.D.N.Y. 2004) (citations omitted). The Court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (original emphasis).

"[T]he general federal venue provisions [are] set out in 28 U.S.C. § 1391" *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 110 F.3d 861, 864 (2d Cir. 1997). According to 28 U.S.C. § 1391(b), "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." As Oleo and SPC are diverse parties, Dkt. No. 1, Ex. A, ¶¶ 1–2, 28 U.S.C. § 1391(b)(1) does not apply.

## II. NEW YORK IS THE SEAT OF ARBITRATION

The Federal Arbitration Act ("FAA") states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10. When evaluating whether venue is proper, courts in the Second Circuit "have generally found that the interests of justice and the convenience of all involved are best served by having the action heard in the forum where the arbitration took place." *Crow Const. Co. v. Jeffrey M. Brown Assocs., Inc.*, 2001 WL 1006721, at *2 (S.D.N.Y.

August 31, 2001) (citing *Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 18 (2d Cir. 1986)).

Oleo asserts that the arbitration took place in New York City, stating that AFOA Arbitration Rules default to New York City. The AFOA Arbitration Rules state:

Section 9. Locale and Site of Arbitration

(a) All arbitrations shall be held in New York City, or such other place as all parties shall agree.

(b) The site, the place where the hearings shall take place, is to be designated by the AAA, unless the arbitrator and the parties agree on a different site

Dkt. No. 12, Ex. O, § 9. It is uncontested that § 9(a) governs the location of the "seat" of the arbitration, while § 9(b) governs the location of the hearing. Doc. No. 26, p. 4; Doc. No. 27, p. 3. Courts agree that the location of the hearing and the location of the arbitral seat are two separate things and an arbitration can be sited in a different place from where the hearing is held. *See, e.g., Campaign Registry, Inc. v. Tarone*, 2024 WL 3105524 (S.D.N.Y. June 24, 2024); *Seaton Ins. Co. v. Cavell, USA*, 2007 WL 9657277 (D. Conn. March 21, 2007).

On September 25, 2023, Oleo's then-counsel submitted a Joint Proposed Scheduling Order, which said: "A Final Hearing in this matter will commence before the Arbitrator(s) at Chicago, Illinois on February 12, 2024 at 9AM." Dkt. No. 12, Ex. H, ¶ 7. SPC argues that by agreeing to change the location of the Final Hearing to Chicago, Oleo and SPC also agreed to change the seat of the arbitration to Chicago.

SPC cites *Seaton Ins. Co.*, 2007 WL 9657277, to support the proposition that an agreement to change an arbitration hearing's location also changes the location of the arbitral seat. This is an incorrect interpretation of *Seaton*. The court in *Seaton* determined that a court in the new hearing's location had the jurisdiction to enforce subpoenas; it did not determine the

location of the seat of the arbitration. *Id.* at *2. Here, although the parties agreed to hold their final hearing in Chicago, Illinois, Dkt. No. 12, Ex. H, ¶ 7, the arbitral seat remained in New York City. Following the same logic, the change from an in-person hearing to a virtual hearing also did not change the location of the arbitral seat.

Courts consider arbitration awards to have been granted at the location of the arbitral seat. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.* 850 F.3d 58, 70 (2d Cir. 2017). 9 U.S.C. § 10 states that an arbitration award may be vacated by "the United States court in and for the district wherein the award was made." Because New York City was the arbitral seat, the court considers the arbitration award to have been granted in New York City.

For this reason, venue is proper in this district, so the motion to dismiss the case on that ground must be denied.

### III. THE FIRST-TO-FILE RULE MEANS THE SOUTHERN DISTRICT OF MISSISSIPPI SHOULD DECIDE WHAT FORUM HEARS THE CASE

The 'first-to-file' rule in the Second Circuit states that "where two competing lawsuits have been filed in different jurisdictions, the first filed action is given priority and the second action may be suspended in the interests of judicial economy." *Shaw Family Archives v. CMG Worldwide, Inc.*, 434 F.Supp.2d 203, 210 (S.D.N.Y. 2006) (citing *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). Courts can then dismiss, transfer, or stay the later-filed case in favor of the first suit filed. *Lau v. Wells Fargo & Co.*, 2021 WL 1198964, at *2 (S.D.N.Y. March 30, 2021).

However, there are "two circumstances that warrant departure from the first-[to-file] rule: (1) where there are 'special circumstances,' and; (2) where the 'balance of convenience' tilts in favor of the second forum." *Pippins v. KPMG LLP*, 2011 WL 1143010, at *2 (S.D.N.Y. March

21, 2011) (citing *Emp'rs Ins. Of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)).

The first-to-file rule applies here. The first-to-file rule applies in cases where "the claims, parties, and available relief ... [do] not significantly differ between the actions." *Oleg Cassini v. Serta, Inc.*, 2012 WL 844284, at *3 (S.D.N.Y. March 13, 2022). In both the Mississippi Action and the New York Action, the parties assert identical claims and counterclaims: in both actions, Oleo seeks an order vacating the arbitrator's decision, and while SPC has not yet filed any counterclaims in this lawsuit, it seeks to confirm the award in Mississippi — indeed, that was the first action taken by either party after issuance of the award — and it would undoubtedly cross-move to confirm the award if it were forced to litigate here in New York. Dkt. No. 1, Ex. A; Dkt. No. 12, Ex. C. Therefore, the claims, parties and available relief are identical in both actions, and the first-to-file rule applies.

However, where two federal courts "are presented with mirror-image motions to transfer the dueling motions to vacate and confirm the arbitration award — actions which are essentially identical — independent application of the first-filed rule could result in simultaneous rulings that conflict with one another." *Noble v. U.S. Foods, Inc.*, 2014 WL 6603418, at *3 (S.D.N.Y. November 19, 2014) (internal citations omitted). Therefore, "the initial inquiry, in a case such as this, is not where the case should proceed; it is 'which court should grapple with the issue of where the case should proceed.'" *Monroe Staffing Services, LLC*, 2022 WL 684714, at *2 (March 7, 2022) (quoting *MSK Ins., Ltd. v. Emps. Reins. Corp.*, 212 F.Supp.2d 266, 267 (S.D.N.Y. 2002)). "The court before which the first-filed action was brought determines which forum will hear the case." *MSK Ins., Ltd.*, 212 F.Supp.2d at 267. Unlike the rule which determines who should decide the merits of the case, this is a bright-line rule, *id.*, with no exceptions. *Pern Am. Inc. v. Lambert*,

Case 1:24-cv-04706-CM  Document 35  Filed 09/24/24  Page 9 of 11

2003 WL 22383369, at *1–3 (S.D.N.Y. October 17, 2023). Hence, this Court should "refrain from ruling pending a determination by the court of first-filing." *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 556 n.4 (S.D.N.Y. 2000). Therefore, this Court will defer to the Southern District of Mississippi, which will decide which court will decide the matter on the merits.

SPC counters this by stating this Court has a history of dismissing duplicative claims under Fed. R. Civ. P. 12(b)(3) in favor of the first-to-file district. *See Lau*, 2021 WL 1198964; *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128 (S.D.N.Y. 1994). These cases both differ from the instant action. In *Lau*, the plaintiff's collective action was duplicative of an earlier class action filed in the Western District of Pennsylvania. *Id.* at *1. The court concluded that because the plaintiff could opt into the class in the Western District of Pennsylvania, dismissal was more appropriate. *Id.* at *5. Meanwhile, in *800-Flowers*, the court dismissed the defendant's claim that could have been raised in an ongoing declaratory judgment filing in the Circuit Court of Orange County. *Id.* at. In *800-Flowers*, there would have been no conflict between the Court's judgments, as the claim brought had not yet been raised in the first-filed-case. In both of the above cases, the ongoing litigation was not entirely duplicative of the initial case, and there was no outstanding transfer motion in the first-filed forum. Therefore, we believe it is not only prudent, but necessary, to defer to the Southern District of Mississippi's choice of venue.

IV.     **THE COURT CAN STAY THESE PROCEEDINGS SUA SPONTE**

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank*, N.A., 226 F.3d 133, 137 (2d. Cir 2000). "Stays are particularly appropriate where they 'promote judicial economy, avoidance of confusion and possible inconsistent results.'" *Kwik Ticket Inc. v. Spiewak*, 2022 WL 3446316, at *4 (E.D.N.Y. August 17, 2022) (quoting *Birmingham Associates Ltd. v. Abbott*

9

*Laboratories*, 547 F.Supp.2d 295, 302 (S.D.N.Y. 2008)). A court may stay a case *sua sponte* for the purposes of promoting fairness and judicial economy. *See SEC v. Chestman*, 861 F. 2d 49, 50 (2d Cir. 1988). Here, Oleo raises claims that are duplicative of its counterclaims in the Mississippi Action. Moreover, continuing this case when the question of transfer is open before the Southern District of Mississippi would prove an inefficient use of judicial resources.

Finally, in *Noble v. US Foods, Inc.*, 2014 WL 6603418 (S.D.N.Y. November 19, 2014), my colleague Judge Abrams ordered a stay *sua sponte* in a case much like this one — the plaintiff brought a motion to vacate an arbitration award, the defendant moved to dismiss or transfer to a first-filed forum where duplicative claims had been raised, and the court ruled that the bright-line rule mentioned above applied. I see no reason to stray from *Noble*, and therefore will stay this proceeding pending the Southern District of Mississippi's decision.

## CONCLUSION

As noted above, this is not the Court's preferred way to handle this matter. I was fully prepared to decide the Motion to Transfer so that this case could be heard and decided on its merits. I believe the case ought to proceed in Mississippi, where Oleo is located, where the first action was taken with respect to the award, and where the award will have to be enforced if it is confirmed (and given the paucity of reasons an arbitration award may be vacated, the odds that it will be confirmed are high). However, I assure the parties that, should my colleague in Mississippi decide to transfer the case to this Court, the motions will immediately be placed on an expedited schedule, with all briefing to conclude within 14 days, and no extensions allowed for any reason.

For now, the Motion to Dismiss Pursuant to 12(b)(3) is DENIED and this action is STAYED pending the resolution of the Motion to Transfer now pending in the Southern District

of Mississippi. Within three business days of the Southern District of Mississippi's decision, SPC — the plaintiff in the Mississippi Action — must submit a letter to the Court with a copy of that decision attached. If the case comes here, the Court will set the aforementioned 14-day briefing schedule. If it remains in Mississippi, I will be sure that the file in this matter is transferred to Mississippi forthwith.

The Clerk of the Court is respectfully directed to remove the motion at Dkt. No. 8.

This constitutes the decision and order of the court. It is a written opinion.

Dated: September 24, 2024

_____
U.S.D.J.

TO ALL PARTIES BY ECF